DECISION
 IN MANDAMUS {¶ 1} Zaida Delgado filed this action in mandamus, seeking a writ which compels the Industrial Commission of Ohio ("commission") to vacate its order denying her temporary total disability ("TTD") compensation based upon a finding that she voluntarily abandoned her employment. *Page 2 
 {¶ 2} In accord with Loc. R. 12, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes a recommendation that we grant a limited writ of mandamus.
 {¶ 3} No party has filed objections to the magistrate's decision. The case is now before the court for review.
 {¶ 4} No error of law or fact is apparent on the face of the magistrate's decision. We, therefore, adopt the findings of fact and conclusions of law contained in the magistrate's decision. As a result, we issue a writ of mandamus which compels the commission to vacate the order of the staff hearing officer dated August 17, 2007, and to conduct further proceedings to address the question of whether or not Zaida Delgado is entitled to receive TTD compensation consistent with the magistrate's decision as adopted by the court.
Writ granted.
FRENCH and BROGAN, JJ., concur.
BROGAN, J., of the Second Appellate District, sitting by assignment in the Tenth Appellate District. *Page 3 
 (APPENDIX A) MAGISTRATE'S DECISION IN MANDAMUS {¶ 5} In this original action, relator, Zaida Delgado, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her temporary total disability ("TTD") compensation on grounds that she *Page 4 
voluntarily abandoned her employment, and to enter an order granting said compensation.
Findings of Fact: {¶ 6} 1. In November 2002, relator began her employment as an orthodontic assistant with respondent Ira H. Weiss, D.D.S., M.S.D. ("Weiss" or "employer"), a state-fund employer. She generally worked one and one-half days per week for Weiss as his assistant.
 {¶ 7} 2. On July 21, 2005, relator filed an occupational disease claim for bilateral carpal tunnel syndrome ("CTS"). Weiss refused to certify the claim.
 {¶ 8} 3. On August 12, 2005, the Ohio Bureau of Workers' Compensation ("bureau") mailed an order disallowing the claim. Relator administratively appealed the bureau's order.
 {¶ 9} 4. Relator's administrative appeal from the bureau's August 12, 2005 order was not heard by a district hearing officer ("DHO") until June 23, 2006, more than ten months later. The record fails to disclose the cause of the delay in hearing relator's administrative appeal.
 {¶ 10} 5. Following the June 23, 2006 hearing, the DHO issued an order vacating the bureau's order and allowing the claim for "carpal tunnel syndrome bilaterally." The employer administratively appealed the DHO's order.
 {¶ 11} 6. Following an August 23, 2006 hearing, a staff hearing officer ("SHO") issued an order that allows the claim for "bilateral carpal tunnel syndrome." The SHO's order states: *Page 5 
 * * * [I]njured worker worked as an orthodontic assistant part-time. As part of her regular job duties, she used both hands to tighten dental wires and braces as part of the orthodontic treatment. Early in 2005, she began to develop numbness and tingling in her hands.
 {¶ 12} 7. Thus, the industrial claim was ultimately allowed by the SHO some 13 months after the claim was filed. June 10, 2005 is recognized by the commission as the date of diagnosis of the occupational disease in claim number 05-846399.
 {¶ 13} 8. Earlier, on June 27, 2005, relator saw Ralph Guggenheim, M.D., at a family practice clinic ("clinic") of the MetroHealth Medical Center. On June 27, 2005, Dr. Guggenheim wrote:
 Has had numbness in both hands for several months[.] Lately also has had pain in the wrist area[.]
 [Patient] is an orthodontist's assistant, having to work in awkward positions, for the past three years.
 Will have custody over four of her grandchildren, three of them already now[.]
 * * *
 * * * Tinel hinted [positive] in [both] hands. Mild tenderness in wrist area, both hands, and swelling mainly in the right.
 354.0 CARPAL TUNNEL SYNDROME (primary encounter diagnosis)[.]
 Note: [S]ignificant, with inflammatory irritation of the wrist joints[.]
 Plan: MOTRIN 800 MG OR TABS, SPLINT, MISC, SPLINT, MISC[.]
(Emphases sic.) *Page 6 
 {¶ 14} 9. The parties agree that relator's last day of work was June 28, 2005. (Relator's brief, at 7; Respondent Weiss' brief, at 1.)
 {¶ 15} 10. On July 20, 2005, relator saw Beth McLaughlin, M.D., at the clinic. Dr. McLaughlin ordered an EMG and then referred relator to a hand surgeon. On July 20, 2005, Dr. McLaughlin wrote:
 [H]as bilateral writ pain[.] [H]as been diagnosed with CTS by [primary care physician] in past[.] [F]irst had numbness but lately has had extreme pain[.] [W]as dental hygienist but had to take time off work [because] pain too severe[.] [H]as wrist splint which helps some[.]
 [A]lso recently got custody of her 3 grandchildren and is under lots of stress[.]
 {¶ 16} 11. On August 9, 2005, relator saw Shu Quey Huang, M.D., at the clinic. After electrical diagnostic testing, Dr. Huang wrote: "CTS most likely."
 {¶ 17} 12. On August 22, 2005, relator was seen at the clinic's endocrinology department to rule out her thyroid problem as a cause of her CTS.
 {¶ 18} 13. Also on August 22, 2005, relator was seen at the clinic by a hand surgeon. She was told to return as needed if symptoms worsened or failed to improve.
 {¶ 19} 14. On September 6, 2005, relator was seen at the clinic by Dr. McLaughlin who prescribed Percocet and ordered a steroid injection for CTS.
 {¶ 20} 15. On October 11, 2005, relator returned to the clinic to see Dr. McLaughlin who noted that relator "had injection in right wrist and it didn't help pain at all."
 {¶ 21} 16. On March 3, 2006, relator was again seen at the clinic. She was instructed to continue taking Elavil to help with pain and sleep. *Page 7 
 {¶ 22} 17. On June 21, 2006, relator saw Dr. McLaughlin at the clinic. During the visit, Dr. McLaughlin prescribed Amitriptyline HCL 50 MG or Tabs" for her CTS. Other medications were discontinued. A return visit was scheduled for six months thereafter.
 {¶ 23} 18. On January 10, 2007, approximately six and one-half months after the last visit, relator was seen at the clinic by Dr. McLaughlin who wrote:
 Also [bilateral] carpal tunnel which wakes [patient] up from sleep at least 3x/ night. Wears splints at night but she says that she still gets numbness, which is more aggravating than the pain. Hasn't worked as a dental assistant for 18 months due to this condition.
 * * *
 354.0 CARPAL TUNNEL SYNDROME (primary encounter diagnosis)[.]
 Note: [S]tates can't have surgery [because] has too many family responsibilities[.]
 Plan: [A]dvised to wear splints more often[.]
(Emphasis sic.)
 {¶ 24} 19. On January 25, 2007, Dr. McLaughlin completed a C-84 on which she certified TTD from June 27, 2005 to "current." Dr. McLaughlin listed January 10, 2007 as the date of last examination or treatment.
 {¶ 25} 20. On February 22, 2007, the bureau mailed an order awarding TTD compensation beginning June 27, 2005. The employer administratively appealed the bureau's order.
 {¶ 26} 21. On April 30, 2007, relator consulted with orthopedic surgeon Michael W. Keith, M.D., at the clinic. Dr. Keith wrote: "Our plan is to proceed with surgical decompression on the left hand." *Page 8 
 {¶ 27} 22. On May 24, 2007, relator underwent left median neuroplasty performed by Dr. Keith.
 {¶ 28} 23. Following a June 21, 2007 hearing, a DHO issued an order vacating the bureau's February 22, 2007 order. The DHO's order explains:
 The BWC order awarding temporary total disability compensation from 06/28/2005 to date and continuing is vacated. The District Hearing Officer finds that the injured worker is not entitled to the payment of temporary total disability compensation as she voluntarily removed herself from the work force on 06/28/2005 by resigning her employment with the employer named in this claim. There is no indication in the actual resignation that she ceased employment due to any symptoms resulting from the allowed conditions in this claim. The District Hearing Officer further notes that the injured worker testified at today's hearing that she did not look for any type of work following her resignation. The notes provided contemporaneous with this period from Dr. McLaughlin and MetroHealth do not corroborate that injured worker was taken off work as a result of symptoms resulting from the allowed conditions in the claim. There is a note dated 06/27/2005 indicating that the injured worker indicated she worked as a dental hygienist but had to take time off work due to severe pain in the hands bilaterally. The District Hearing Officer finds that this is not exactly true as the injured worker resigned her employment on 06/28/2005 once again without any indication that was related to the allowed conditions in the claim. An office note dated 10/04/2005 indicates that the injured worker quit her job as an orthodontist assistant after working three years and it notes that she is trying to pursue a workers' compensation claim. The final note that I will reference is dated 01/10/2007 and it indicates that the injured worker has not worked as a dental assistant for 18 months due to this condition, however, there is no medical documentation over that 18 month period disabling the injured worker due to her symptoms.
 The District Hearing Officer determines that the injured worker is not entitled to temporary total disability compensation as she voluntarily removed herself from the work force on 06/28/2005. District Hearing Officer further *Page 9 
notes that the injured worker has presented no evidence that she looked for work after her resignation. In the alternative the District Hearing Officer concludes that there [is] insufficient medical documentation to substantiate this 18 month period of temporary total disability compensation as a result of the allowed conditions in the claim as there is no contemporaneous medical evidence in the record indicating that she is disabled due to the allowed conditions.
 {¶ 29} 24. Relator administratively appealed the DHO's order of June 21, 2007.
 {¶ 30} 25. Following an August 17, 2007 hearing, an SHO issued an order stating:
 The order of the District Hearing Officer, from the hearing dated 06/21/2007, is modified to the following extent:
 Claimant's request for temporary total compensation from 6/28/2005 to the present and continuing is denied.
 The Staff Hearing Officer finds that claimant voluntarily removed herself from the work force in June, 2005 when she quit her employment with the named employer. This finding is based upon the employer's 6/19/2007 letter. The Staff Hearing Officer further finds that there is a lack of medical evidence contemporaneous with the time that claimant resigned her employment which indicated that her carpal tunnel syndrome condition prevented her from working. Finally, based upon a review of the medical records on file, the Staff Hearing Officer finds that claimant was not actively being treated for her carpal tunnel syndrome during the alleged disability period.
 {¶ 31} 26. The record contains a "To Whom It May Concern" letter from Dr. Weiss dated June 19, 2007. The letter states:
 This letter is confirmation that Zaida Delgado's termination date was 6/28/05. She informed me that she would no longer be working in my office and was seeking employment elsewhere. * * *
 {¶ 32} 27. On November 15, 2007, relator, Zaida Delgado, filed this mandamus action. *Page 10 
Conclusions of Law: {¶ 33} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 34} A voluntary abandonment of employment can bar TTD compensation.State ex rel. Jones Laughlin Steel Corp. v. Indus. Comm. (1985), 29 Ohio App.3d 145; State ex rel. Ashcraft v. Indus. Comm. (1987),34 Ohio St.3d 42. However, an injury-induced abandonment of employment is not considered to be voluntary. State ex rel. Rockwell Internatl. v. Indus.Comm. (1988), 40 Ohio St.3d 44; State ex rel. Scott v. Indus. Comm.
(1988), 40 Ohio St.3d 47; State ex rel. White Consolidated Industries v.Indus. Comm. (1990), 48 Ohio St.3d 17.
 {¶ 35} The SHO's order of August 17, 2007 indicates that the commission determined that relator's abandonment of her employment is premised upon: (1) Weiss' June 19, 2007 letter; (2) the lack of a disability opinion issued contemporaneously with the job abandonment; and (3) a finding that relator was not actively being treated for her CTS during the claimed period of disability.
 {¶ 36} The record before this court clearly shows that the SHO's finding that relator was not actively being treated for her CTS during the claimed period of disability is not supported by some evidence.
 {¶ 37} The C-84 completed by Dr. McLaughlin on January 25, 2007 indicates that the claimed period of disability begins June 27, 2005. However, given that relator worked on June 28, 2005, the claimed period of disability cannot begin June 27, 2005. *Page 11 
 {¶ 38} Immediately before the claimed period of disability, relator was indeed treated for her CTS by Dr. Guggenheim. On June 27, 2005, noting significant inflammatory irritation of the wrist joints, Dr. Guggenheim prescribed Motrin and splinting.
 {¶ 39} Moreover, the record before this court undisputedly shows that relator was being actively treated for her CTS during July, August, September and October 2005, during March and June 2006, and during January 2007, when Dr. McLaughlin completed the C-84. Based upon the record before this court, it is difficult to see how, upon review of the medical records, the SHO could conclude that relator was not actively being treated for her CTS during the claimed period of disability.
 {¶ 40} The SHO's order of August 17, 2007 fails to address any of the visits to the clinic involving treatment of CTS. The SHO's order, without explanation, simply finds that relator was not actively being treated for her CTS during the alleged period of disability.
 {¶ 41} Clearly, the SHO's finding that relator was not actively being treated for her CTS during the alleged period of disability cannot be a basis for finding that the job abandonment was not injury induced.
 {¶ 42} Weiss' June 19, 2007 letter, by itself, provides no basis for determining that the job abandonment was not injury induced. Again, Dr. Weiss wrote:
 This letter is confirmation that Zaida Delgado's termination date was 6/28/05. She informed me that she would no longer be working in my office and was seeking employment elsewhere. * * *
 {¶ 43} Weiss' June 19, 2007 letter does not indicate that relator gave Weiss a reason why she would no longer be working at his office, and Weiss does not indicate his *Page 12 
understanding or belief as to why he was informed that relator would no longer be working at his office.
 {¶ 44} While Weiss states that he was informed that relator "was seeking employment elsewhere," there is no indication of what type of job relator was allegedly seeking. Thus, there is no suggestion from the Weiss letter that relator was seeking employment similar to that which she performed for Dr. Weiss. While Weiss' letter can be interpreted to mean that Weiss was informed by relator on June 28, 2005 that she was quitting her employment, the letter provides no evidence as to whether the job abandonment was injury induced. Contrary to what may be suggested in the SHO's order, that the letter fails to disclose any reason for relator's quitting her job cannot be translated into evidence that the job quit was not injury induced.
 {¶ 45} It is indeed true that there is a lack of medical evidence contemporaneous with the time that relator quit her employment which specifically indicates that CTS prevented her from working. In fact, disability opinion evidence was not generated until January 2007, some 18 months after relator quit her job.
 {¶ 46} The question before this court is whether the 18 month delay in producing a medical opinion of TTD can be the sole basis for determining that the job quit was not injury induced given that the SHO's order shows that the SHO did not accurately understand the medical evidence showing active treatment of CTS during the claimed period of disability.
 {¶ 47} In the magistrate's view, the 18 month delay in producing a disability opinion, such as the one contained on the C-84, cannot be the sole basis for determining that the job quit was not injury induced, especially under the circumstances here. *Page 13 
 {¶ 48} To begin, much of the delay is explained by the record before this court. As previously noted, relator did not have an allowed claim until late June 2006, approximately one year after the June 28, 2005 job quit. Thus, relator had no reason to seek a C-84 from her treating physician until the DHO allowed the claim following the June 23, 2006 hearing.
 {¶ 49} Moreover, on June 21, 2006, just two days before the June 23, 2006 hearing, Dr. McLaughlin prescribed "Amitriptyline HCL 50 MG" for relator's CTS and then scheduled a return visit for six months later. The return visit occurred on January 10, 2007, and the C-84 was completed on January 25, 2007.
 {¶ 50} Given the above analysis, the magistrate concludes that the commission has failed to give a valid basis for determining that the job quit was not injury induced. Thus, the commission's finding of a voluntary abandonment of employment constitutes an abuse of discretion.
 {¶ 51} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of August 17, 2007 and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates relator's request for TTD compensation.
 *Page 1